IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-604-JFA |
| ) | |
| v.                                                      ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| HARRY JAMES AUSTIN, III              ) | |
| _____ ) | |

This matter is before the court upon the defendant's *pro se* motion (ECF No. 2860) to reconsider this court's order dismissing, without prejudice, his motions for compassionate release filed pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). The defendant seeks a reduction in his sentence, relying on his medical conditions and the COVID-19 pandemic. The government has responded in opposition and the defendant filed numerous supplements to his original motion.

On July 28, 2021, this court received a letter from the defendant (ECF No. 2653) in support of his motions for compassionate release. Therein, the defendant stated, "I was released to 'home confinement' on June 9, 2021. My release date is set for Sept. 7, 2022." The defendant also noted that he had had many job opportunities, but because of his "monitoring" by the halfway house with an ankle monitor, he was concerned how it might appear to companies who might hire him. He stated that he wanted to go on supervised release where he can go back to work in the field of psychiatric treatment for children where he worked as a manager before his incarceration. He asked the court to remove his monitoring and grant his motion for compassionate release to supervised release so that he can have gainful employment with a salary to provide for his family.

1

By this letter, the court learned that the defendant was no longer incarcerated at the Federal Correctional Institution in Coleman, Florida (FCI Coleman) and had been transferred to a halfway house under the Residential Reentry Program (RRP) by the Bureau of Prisons (BOP). As a result, this court issued an order on October 13, 2021 (ECF No. 2666) asking the defendant to advise the court in writing within 21 days of the date of that order whether or not he wished to continue to litigate his motion for compassionate release or whether he wished to withdraw the motion without prejudice. The order was mailed to the defendant at the RRP office and at a private address in South Carolina provided by the defendant.

The deadline expired with no response from the defendant. As it appeared to the court that the defendant no longer wished to prosecute this matter, the court dismissed the defendant's motions (ECF Nos. 2368, 2393, and 2491) without prejudice on November 30, 2021.

In his present motion to reconsider (ECF No. 2680), the defendant asks the court to refile his motions. He states that while he is no longer incarcerated at the BOP, he believes he is at a greater risk of illness at the Alston Wilkes Society's RRP in Florence, South Carolina. He contends that he is in greater danger because the staff do not wear masks or offer masks to the residents. He complains that there are not proper cleaning materials to sanitize the facility. He also suggests that residents and staff go out in public on a daily basis and are exposed to others who have COVID. He complains that he is treated inhumane and that he is targeted by staff because before prison he was their supervisor and manager.

In his motion to reconsider, he states that he has 9 months left on his sentence at the half-way house. He asks the court to reduce his sentence so he can begin his 4-year term of supervision. He states that he has a great job awaiting him in the transportation and logistics industry.

For good cause shown, the court will vacate its order of November 30, 2021 (ECF No. 2678), reinstate the defendant's motions for compassionate release (ECF Nos. 2368, 2393, and 2491), and decide the issues on the merits.

## INTRODUCTION

This matter is before the court on the defendant's *pro se* motions for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with his current medical problems, constitutes extraordinary and compelling reasons for his immediate release.

In its response (ECF No. 2432), the government concedes that the defendant has demonstrated an extraordinary and compelling reason for consideration of a sentence reduction. However, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.[1]

---

[1] In its response in opposition (ECF No. 2440), the government deemed the defendant's letter filed June 8, 2020 as a motion to amend/correct the judgment and commitment in this case. In that letter motion (ECF No. 2400), the defendant argues that the court incorrectly calculated his Guidelines sentencing range and that his sentence should be reduced. The government argued that the motion to amend his sentence
(continued...)

3

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

---

¹(...continued)
should be dismissed because it was actually a motion pursuant to 28 U.S.C. § 2255. The government asked the court to recharacterize the defendant's motion as one under § 2255. This court entered an order (ECF No. 2454) notifying the defendant that it intended to recharacterize his motion to amend as one under § 2255. Pursuant to *Castro v. United States*, 124 S.Ct. 786 (2003), this court also notified the defendant of its intention to recharacterize his motion; warned him that this recharacterization means that any subsequent motion to vacate will be subject to the restrictions on second or successive motions to vacate; and provided the defendant an opportunity to withdraw the motion or amend it so that it contained all the defendant's claims. In his response to this court's order, the defendant indicated that he did not want to pursue a § 2255 at this time. (ECF No. 2501).

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider

the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

It appears to this court that the defendant has fully exhausted his administrative remedies. Therefore, the court will proceed to review the matter on the merits.

### DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible

that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

The defendant contends that he suffers from high blood pressure, hypertension, obesity, and severe sleep apnea for which he uses a CPAP machine. The Presentence Report (PSR) prepared in 2018 noted that the defendant described his overall health as good and that he was not under the care of a physician or taking any medication. (ECF No. 2083 at ¶ 50–51).

In any event, the government agrees that the defendant has demonstrated an extraordinary and compelling reason because of the fact that his obesity, age, and severe sleep apnea have been identified by the CDC as medical conditions that can be exacerbated by COVID-19. Accordingly, the court will conclude that the defendant has, based on his medical condition, demonstrated an extraordinary and compelling reason for consideration of a sentence reduction.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense.* During the Spring of 2013, the FBI initiated an investigation into the drug trafficking activities of Folk Nation gang members operating in the Midlands area of South Carolina.[2] Through the use of intercepted wiretap communications and cooperating witnesses, the FBI determined that Lamario Wright supplied numerous individuals with cocaine and crack for redistribution. The defendant personally distributed 28 grams or more of crack cocaine in furtherance of the conspiracy. Converted to their marijuana equivalent, the drugs totaled 1,796.7 kilograms.

The defendant was one of 32 defendants named in a 1-Count Superseding Indictment charging "Conspiracy to Possess with Intent to Distribute and to Distribute 28 Grams of a Mixture or Substance Containing Crack Cocaine," a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(A).

On February 25, 2016, the defendant signed a written plea agreement (ECF No. 969) and pleaded guilty to the lesser included offense in Count 1.

---

[2] In his PSR, the defendant reported no gang affiliations.

On July 20, 2016, after the defendant pleaded guilty, he entered into a Bridge Program Participant Agreement (ECF No. 1303). While he was on pretrial supervision, the defendant tested positive for drug use multiple times, including twice after he pleaded guilty to the instant offense. On July 20, 2016, the defendant began Phase I of the BRIDGE Program, and on September 20, 2017, he graduated from the BRIDGE Program. On November 1, 2017, the defendant was moved back to Phase 3 of the BRIDGE Program due to submitting a positive drug test for marijuana on October 19, 2017. He submitted another positive marijuana drug test on December 18, 2017, and again on February 1, 2018. No sanction was imposed at that time and his case was placed on the docket for sentencing. On April 24, 2018, the defendant reported to the U.S. Probation Office, Florence Division, at which time he tested positive for marijuana. As a result, U.S. Probation Office notified the Court about the defendant's bond violation. On May 18, 2018, the defendant again tested positive for marijuana. On May 22, 2018, the defendant appeared before Magistrate Judge Paige J. Gossett for a bond revocation hearing, at which time the defendant's bond was revoked and he was ordered detained.

The Presentence Report (PSR) (ECF No. 2083) prepared by the United States Probation Office determined that the defendant's total offense level was 32. As a result of his failure to comply with his bond and the continued use of drugs while on pretrial release and after his guilty plea, the defendant was denied a reduction for acceptance of responsibility. He was also assessed 2 points for possession of a firearm in connection with

the instant offense.[3] With a criminal history category of II, the Guideline range for imprisonment was 135 to 168 months.

In July 2018, this court sentenced the defendant to a custodial term of 60 months. The reason for the reduced level was that the court applied a 1:1 ration of crack to cocaine disparity.[4] The court also granted a variance based upon the defendant's graduation from drug court, resulting in a sentence of 60 months, the mandatory minimum sentence under the applicable statute. The term of supervised release was set at 4 years.

The defendant did not appeal his conviction or sentence.

2. *History and Characteristics of the Defendant*. The defendant is 38 years old. He presently resides at the Alston Wilkes Society in Florence South Carolina, as part of the RRP. His projected release date to supervision is September 8, 2022.

The defendant has prior misdemeanor convictions for Simple Possession of Marijuana and Driving Under the Influence, which resulted in a criminal history category of II.

The defendant attended Claflin University and was just six credit hours shy of earning a Bachelor's Degree in Business/Marking. He has prior employment as a mental health technician, and was a senior mental health technician.

---

[3] An SKS rifle found at the home of Randy Johnson during a search warrant was sold to Wright by the defendant in exchange for crack cocaine.

[4] Applying a 1:1 ratio between cocaine powder and crack cocaine results in the following Guideline calculation: 556 grams (56 gm of cocaine powder and 500 gm of crack cocaine) corresponds to a base level of 24. Add 2 points for firearm, for an adjusted offense level of 26. No reduction for acceptance of responsibility. A total offense level of 26 and a criminal history category of II results in a Guideline range of 70 to 87 months. (ECF No. 2083 at ¶ 82).

The defendant is single and has never been married. He has 2 children. At the time of his arrest, he lived with this mother, her boyfriend, and his two siblings in Lake City, South Carolina. The defendant reported that he had a great childhood and experienced no major traumas.

*Post Sentencing Conduct*

Since his sentencing in this case, the defendant has had only one disciplinary infraction in 2018 which involved the use of drugs/alcohol. The defendant states that he has had exemplary conduct while at the BOP and that he has completed the Residential Drug Abuse Program, Parenting, Dave Ramsey's Financial Peace Program, and the Phoenix Re-Entry Program.

The defendant's motion suggests that if he is released to home confinement, he will reside with his mother in Lake City, South Carolina. He notes that he will seek employment with his previous employer, will work with the family bail bonding business, as well as transportation services. He states that he has a family friend who is a nurse who is aware of his medical needs.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied.[5] (ECF Nos. 2368, 2393, and 2491).

---

[5] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons],
(continued...)

IT IS SO ORDERED.

January 11, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

⁵(...continued)
the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

14